O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NFT PARCEL A LLC, a California limited liability company, | ) ) ) ) | Case No. EDCV 09-827-VAP (VBKx) |
| | ) | **[Motion filed on October 8, 2009]** |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING SUMMARY JUDGMENT** |
| MICHAEL S. MARIX, et al., | ) ) ) | |
| Defendants. | ) ) | |

In 2006, NFT Parcel A LLC sold a parcel of land secured by a purchase money mortgage.  After amendments were made to the original loan agreement, Michael Marix and the Marix Family Trust signed guarantees for the loan, made to a non-party limited liability company apparently under their control.  That entity eventually defaulted on its debt.

NFT Parcel A LLC brought this action seeking to enforce the guarantees of Mr. Marix and the Marix Family Trust, and now seeks summary judgment on its claim for

breach of guaranty.  After reviewing and considering all papers filed in support of, and in opposition to, as well as the arguments advanced by counsel at the hearing on, the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

### A.   Uncontroverted Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  <u>See</u> Local Rule 56-3.

On January 18, 2006, NFT Parcel A LLC ("Plaintiff") and Desert Wells 237 LLC ("Desert Wells") entered into an agreement whereby Desert Wells purchased approximately 36 acres of land in the city of Palm Desert, California, (the "Property") from Plaintiff.  The purchase was financed in part by a promissory note (the "Note") in the amount of $4,367,674 secured by a deed of trust (the "Original Deed") creating a first lien on the Property. (<u>See</u> Decl. of Thomas Noble ("Noble Decl.")  Exs. A, B; Opp'n at 2:4-7.)  The maturity date of the Note was February 1, 2007, and the annual interest rate was eight percent.  (Noble Decl. Ex. A ¶ 1.)

1    On March 6, 2006, Palm Desert 31 LLC ("Palm Desert")
2  assumed Desert Wells's obligations under the Note and
3  Original Deed.  (Noble Decl. Ex. C.)

4

5    At an unspecified time, Palm Desert obtained a loan
6  from La Jolla Bank, FSB ("La Jolla") in the amount of
7  $9,720,000 (the "La Jolla Loan") which was secured by a
8  deed of trust executed in favor of La Jolla.[1]  On April
9  18, 2006, Plaintiff and Palm Desert entered into a
10 subordination agreement whereby Plaintiff agreed to
11 subordinate the Original Deed to the La Jolla Deed.
12 (Noble Decl. Ex. D.)  On April 21, 2006, Defendants
13 Michael Marix and the Marix Family Trust ("Defendants")
14 executed a guaranty (the "Original Guaranty") whereby
15 they guaranteed the debt of Palm Desert under the Note.
16 (Noble Decl. Ex. E.)

17

18   On April 18, 2007, Plaintiff and Palm Desert agreed
19 to an amendment of the terms of the Note ("Amendment
20 One").  (Noble Decl. Ex. F.)  As a result of Amendment
21 One, the maturity date of the debt became January 31,
22 2008, the interest rate became 9.5 percent, and Palm
23 Desert was required to make a payment of $367,674 to

24

25 _____

26 [1]No party provides any evidence of the existence of
   the La Jolla Loan or Deed or of the amount of the La
27 Jolla Loan.  Nevertheless, because neither party disputes
   these facts and both parties rely on them, (see Mot. at
28 5:11-18; Opp'n at 2:17-21), the Court will treat these
   facts as uncontroverted for purposes of the Motion.

3

1  reduce the principal amount of the debt to $4,000,000.
2  (Id. at ¶¶ 1-3.)   Palm Desert made the required payment.
3  (Noble Decl. ¶ 9(c).)

4

5      On June 3, 2008, Plaintiff and Palm Desert agreed to
6  a second amendment of the Note ("Amendment Two").  (Noble
7  Decl. Ex. G.)   As a result of Amendment Two, the maturity
8  date of the debt became January 15, 2009, Palm Desert was
9  required make a payment of $2,000,000 to reduce the
10 principal amount of the debt to $2,000,000, and Palm
11 Desert was required to pay all accrued but unpaid
12 interest as of June 30, 2008.  (Id. at ¶¶ 1(a-b).)   Palm
13 Desert made these required payments.  (Noble Decl. ¶
14 10(b).)   Also on June 3, 2008, Defendants executed a
15 guaranty of the debt evidenced by Amendment Two (the
16 "Guaranty").

17

18     On January 15, 2009 — the maturity date set forth in
19 Amendment Two — Palm Desert failed to pay the outstanding
20 principal and interest due under the Note.  (Noble Decl.
21 ¶ 13.)   To date, these amounts remain unpaid.  (Id.)
22 Plaintiff claims total damages in the amount of
23 $2,336,837.93, calculated as follows: (1) principal in
24 the amount of $2,000,000; (2) interest accrued as of the
25 maturity date of $56,472.22; (3) late charges pursuant to
26 paragraph 6 of the Note in the amount of $102,823.61; and
27
28

4

1  (4) interest accrued after the maturity date in the

2  amount of $177,542.10 as of October 1, 2009.

3

4  **B.   Procedural History**

5      Plaintiff filed its Complaint on March 30, 2009 in

6  the Superior Court of the State of California for the

7  County of Riverside, alleging causes of action for (1)

8  breach of guaranty; (2) "for money due;" and (3) for

9  account stated.  (Compl. ¶¶ 18-31.)  On April 28, 2009,

10  Defendants removed this action to this Court.  (Doc. No.

11  1.)

12

13      On October 8, 2009, Plaintiff filed this Motion for

14  Summary Judgment or, in the Alternative, Partial Summary

15  Judgment (the "Motion") and supporting papers.[2]

16  Plaintiff moves for summary judgment solely as to its

17  first claim for breach of guaranty.  Accordingly, the

18  Court does not address Plaintiff's second and third

19  claims for relief.[3]  Defendants' Opposition and

20  Plaintiff's Reply were timely filed.  The Motion came

21  before the Court for a hearing on November 16, 2009.

22

23  _____

24  [2]On October 9, 2009, Plaintiff filed an Amended
   Memorandum of Points and Authorities and related papers
   in support of the Motion.  All references herein to the
25  Motion will refer to Plaintiff's amended moving papers.
   The Court does not consider the Memorandum of Points and
26  Authorities filed on October 8, 2009.

27  [3]At the hearing, Plaintiff agreed to voluntary
   dismissal of its second and third claims for relief.
28  Accordingly, the Court dismisses these claims.

1

2                           **II. LEGAL STANDARD**

3         A motion for summary judgment shall be granted when

4    there is no genuine issue as to any material fact and the

5    moving party is entitled to judgment as a matter of law.

6    Fed. R. Civ. Plaintiff. 56(c); <u>Anderson v. Liberty Lobby,</u>

7    <u>Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must

8    show that "under the governing law, there can be but one

9    reasonable conclusion as to the verdict." <u>Anderson</u>, 477

10   U.S. at 250.

11

12        Generally, the burden is on the moving party to

13   demonstrate that it is entitled to summary judgment.

14   <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

15   <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707

16   F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears

17   the initial burden of identifying the elements of the

18   claim or defense and evidence that it believes

19   demonstrates the absence of an issue of material fact.

20   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

21

22        Where the non-moving party has the burden at trial,

23   however, the moving party need not produce evidence

24   negating or disproving every essential element of the

25   non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.

26   Instead, the moving party's burden is met by pointing out

27   that there is an absence of evidence supporting the non-

28

1  moving party's case.  Id.  The burden then shifts to the
2  non-moving party to show that there is a genuine issue of
3  material fact that must be resolved at trial.  Fed. R.
4  Civ. Plaintiff. 56(e); Celotex, 477 U.S. at 324;
5  Anderson, 477 U.S. at 256.  The non-moving party must
6  make an affirmative showing on all matters placed in
7  issue by the motion as to which it has the burden of
8  proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477
9  U.S. at 252.  See also William W. Schwarzer, A. Wallace
10 Tashima & James M. Wagstaffe, Federal Civil Procedure
11 Before Trial § 14:144.  A defendant has the burden of
12 proof at trial with respect to any affirmative defense.
13 Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119,
14 1122 (9th Cir. 2007).

15

16    A genuine issue of material fact will exist "if the
17 evidence is such that a reasonable jury could return a
18 verdict for the non-moving party." Anderson, 477 U.S. at
19 248.  In ruling on a motion for summary judgment, the
20 Court construes the evidence in the light most favorable
21 to the non-moving party.  Barlow v. Ground, 943 F.2d
22 1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v.
23 Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31
24 (9th Cir. 1987).

25

26

27

28

**III. DISCUSSION**

1
2     Plaintiff argues that summary judgment with respect
3  to its claim for breach of guaranty is appropriate
4  because Defendants do not have sufficient evidence to
5  create a genuine issue of fact as to any of their
6  affirmative defenses.  Defendants argue that genuine
7  issues of fact exist with respect to their affirmative
8  defenses, specifically as to whether or not they are
9  entitled to the protections of California's
10 antideficiency laws, (<u>see</u> Opp'n at 6:18-17:24), and
11 whether or not the Guaranty is supported by adequate
12 consideration. (<u>See</u> Opp'n at 17:26-19:3.)[4]  Defendants do
13 not dispute that no genuine issue of fact exists as to
14 the elements of Plaintiff's breach of contract claim.
15 The Court addresses each argument in turn.

**A.    There Is No Genuine Issue of Fact as to Whether or
       Not Defendants Are Protected by California's
       Antideficiency Laws**

    The primary issue raised by the Motion is whether or
not Defendants are protected from liability by
California's antideficiency laws.  "When interpreting
state law, federal courts are bound by decisions of the

_____

    [4]Defendants do not argue that a genuine issue of
material fact exists with respect to any other
affirmative defense asserted in their Answer.
Accordingly, the Court grants the Motion as to
Defendants' third, fifth, sixth, seventh, eighth, ninth,
and tenth affirmative defenses.

1  state's highest court.  In the absence of such a

2  decision, a federal court must predict how the highest

3  state court would decide the issue using intermediate

4  appellate court decisions, decisions from other

5  jurisdictions, statutes, treatises, and restatements as

6  guidance."  Arizona Elec. Power Co-op., Inc. v. Berkeley,

7  59 F.3d 988, 991 (9th Cir. 1995) (citations omitted).

8  With these guidelines in mind, a summary of relevant

9  California law is appropriate.

10

11     California's antideficiency laws provide purchasers

12  in certain types of real estate transactions with

13  protection from deficiency judgments in the event they

14  default on their loan.  In relevant part, section 580b of

15  the California Code of Civil Procedure provides that "[a]

16  vendor is barred from obtaining a deficiency judgment

17  against a purchaser in a purchase money secured land

18  transaction."  DeBerard Props., Ltd. v. Lim, 20 Cal. 4th

19  659, 663 (1999).  A deficiency judgment is defined as "a

20  personal judgment against a debtor for a recovery of the

21  secured debt measured by the difference between the debt

22  and the net proceeds received from the foreclosure sale."

23  Dreyfuss v. Union Bank of Cal., 24 Cal. 4th 400, 407

24  (2000).  A purchase money loan is "a seller-financed loan

25  for real property."  Ghirardo v. Antonioli, 14 Cal. 4th

26  39, 49 (1996); see also Cal. Civ. Proc. Code § 580b.

27  Section 580b thus limits sellers' remedies against buyers

28

1  in purchase money loan transactions to foreclosure on the

2  underlying property.   A purchaser in such a transaction

3  cannot be held personally liable for the difference

4  between the value of the foreclosed property and the

5  amount outstanding on the loan.   Furthermore, a purchaser

6  may not waive the protections of section 580b.   DeBerard,

7  20 Cal. 4th at 670-71.

8

9      The protections of section 580b, however, do not

10 directly apply to guarantors.   Cadle Co. II v. Harvey, 83

11 Cal. App. 4th 927, 932 (2000); Consolidated Capital

12 Income Trust v. Khaloghli, 183 Cal. App. 3d 107, 112-13

13 (1986); Roberts v. Graves, 269 Cal. App. 2d 410, 415

14 (1969).   California courts have identified one instance

15 in which guarantors may indirectly enjoy protection under

16 the antideficiency laws, however.   Where a lender elects

17 to pursue a non-judicial foreclosure against a secured

18 property, the lender may be estopped from seeking a

19 deficiency judgment against the guarantor.   See

20 Khaloghli, 183 Cal. App. at 113; Union Bank v. Gradsky,

21 265 Cal. App. 2d 40, 46-47 (1968).   This indirect

22 protection, however, is waivable.   Cal. Civ. Code §

23 2856(a)(3).

24

25     In order to collect a deficiency judgment against a

26 guarantor, the guarantor "must be a true guarantor and

27 not merely the principal debtor under a different name" —

28

10

1  _i.e._, the guaranty cannot be a "sham." <u>Cadle Co.</u>, 83

2  Cal. App. 4th at 932.  As the Ninth Circuit has

3  recognized, "California law does not define 'sham'

4  guaranties." <u>Paradise Land & Cattle Co. v. McWilliams</u>

5  <u>Enters., Inc.</u>, 959 F.2d 1463, 1467 (9th Cir. 1992).  To

6  determine whether guarantors are actually principal

7  debtors under different names, California courts "look to

8  the purpose and effect of the agreements to determine

9  whether they are attempts to recover deficiencies in

10 violation of [the antideficiency laws]." <u>Torrey Pines</u>

11 <u>Bank v. Hoffman</u>, 231 Cal. App. 3d 308, 320 (1991); <u>see</u>

12 <u>also</u> <u>Commonwealth Mortgage Assurance Co. v. Super. Ct.</u>,

13 211 Cal. App. 3d 508, 515 (1989).  Although California

14 courts have not enunciated a clear test of whether an

15 agreement constitutes an attempt to recover in violation

16 of the antideficiency statutes, they have considered a

17 variety of factors in making such a determination,

18 including whether or not the guarantor was also

19 personally obligated under the underlying loan agreement,

20 <u>see</u>, <u>e.g.</u>, <u>River Bank America v. Diller</u>, 38 Cal. App. 4th

21 1400, 1422 (1995); <u>Torrey Pines</u>, 231 Cal. App. 3d at 321;

22 whether or not the primary debtor, if a corporate entity,

23 was created for the sole purpose of entering into the

24 underlying loan, <u>see</u>, <u>e.g.</u>, <u>Union Bank v. Brummell</u>, 269

25 Cal. App. 2d 836, 838 (1969); whether or not the vendor

26 insisted on structuring the transaction so as to

27 substitute a corporate entity as a borrower in place of

28

1    individuals, <u>see</u>, <u>e.g.</u>, <u>River Bank</u>, 38 Cal. App. 4th at
2    1423; the ownership interests of the primary debtor, if a
3    corporate entity, <u>see</u>, <u>e.g.</u>, <u>Roberts</u>, 269 Cal. App. 2d at
4    416; and whose financial information was reviewed by the
5    vendor before entering into the loan.  <u>See</u>, <u>e.g.</u>, <u>River
6    Bank</u>, 38 Cal. App. 4th at 1423; <u>Torrey Pines</u>, 231 Cal.
7    App. 3d at 320.  The parties cite no authority — and the
8    Court has located none — characterizing any of these
9    factors as essential to the analysis or as sufficient or
10   insufficient, standing alone, to create a genuine issue
11   of fact.

12

13        Here, Plaintiff seeks to hold Defendants liable as
14   guarantors for the outstanding balance of the Note.
15   Defendants, having raised unenforceability of the
16   Guaranty as a defense to Plaintiff's claim, have the
17   burden of establishing either that the Guaranty is a sham
18   or alternatively that, as guarantors of the Note, they
19   are entitled to and did not waive the protections of
20   section 580b.  The question before the Court, therefore,
21   is whether Defendants have adequately raised a genuine
22   issue of fact as to (1) whether or not the Guaranty is a
23   sham, and, if not, (2) whether or not Defendants have
24   waived the protections of section 580b.  For the reasons
25   set forth below, the Court finds that Defendants have
26   failed to carry their burden, and that Plaintiff is
27
28

1  entitled to summary judgment on its claim for breach of

2  guaranty.[5]

3

4     **1.   The Court May Resolve Factual Issues on a Motion**

5          **for Summary Judgment**

6     Relying on <u>Meade v. Cedarapids, Inc.</u>, 164 F.3d 1218

7  (9th Cir. 1999), Defendants first argue that because the

8  question of whether they are true guarantors is factual,

9  the issue cannot be decided on a motion for summary

10 judgment.  (Opp'n at 5:25-7:4.)  This misstates both the

11 holding of <u>Meade</u> and the standard for summary judgment.

12

13    <u>Meade</u> did not announce a <u>per se</u> rule that factual

14 issues cannot be resolved at the summary judgment stage.

15 Rather, the Ninth Circuit in <u>Meade</u> simply restated the

16 standard applicable to a motion for summary judgment,

17 namely that a court reviewing a motion for summary

18 judgment "must determine, viewing the evidence in the

19 light most favorable to the nonmoving party, whether

20 there are any genuine issues of material fact."  <u>Meade</u>,

21 164 F.3d at 1221.  A party cannot escape summary judgment

22 merely by characterizing a dispute as "factual;" rather,

23

24          [5]Plaintiff further argues that even if the Guaranty

25 is a sham, the Note falls within an exception to the
   antideficiency laws created by <u>Spangler v. Memel</u>, 7 Cal.

26 3d 604 (1972), because its character changed when it was
   subordinated to the La Jolla Loan.  (<u>See</u> Mot. at

27 16:17-19:5.)  The Court does not reach this question
   because it has concluded that no genuine issue of fact

28 exists as to whether the Guaranty is a sham.

1  a party seeking to avoid summary judgment has the burden
2  of coming forward with evidence demonstrating that a
3  genuine issue of material fact exists.  See <u>Celotex</u>, 477
4  U.S. at 324.

5

6      Here, Plaintiff has argued that Defendants lack
7  sufficient evidence to create a genuine issue of fact
8  with respect to their affirmative defenses.  As
9  Defendants bear the burden at trial of establishing their
10 affirmative defenses, the burden has now shifted to them
11 to come forward with evidence sufficient to create a
12 genuine issue of fact as to those defenses.  See <u>Celotex</u>,
13 477 U.S. at 325.  If they cannot, summary judgment in
14 Plaintiff's favor is appropriate.

15

16     **2.   There Is No Genuine Issue of Fact as to Whether**
17          **or Not Defendants Are True Guarantors**

18     Defendants argue that the following alleged facts
19 create a genuine issue of fact as to whether or not they
20 are true guarantors: (1) Palm Desert is merely an
21 instrumentality of Defendants, (<u>see</u> Opp'n at 9:24-10:25);
22 and (2) Plaintiff only investigated the financial status
23 of Defendants, and not Palm Desert.  (<u>See</u> Opp'n at
24 10:27-12:5.)  For the reasons discussed below, Defendants
25 have failed to raise a genuine issue of fact as to
26 whether or not Defendants are true guarantors.

27

28

1    Defendants' argument that Palm Desert was merely

2 their instrumentality fails for two reasons.  First,

3 Defendants rely entirely on assertions that Mr. Marix

4 owned and controlled Palm Desert in support of this claim

5 yet fail to provide admissible evidence in support of

6 these naked assertions.  "[A] party cannot manufacture a

7 genuine issue of material fact merely by making

8 assertions in its legal memoranda."  <u>S.A. Empresa De</u>

9 <u>Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.</u>,

10 690 F.2d 1235, 1238 (9th Cir. 1982).  Defendants allege

11 the ownership interests of the various entities involved

12 in the Loan and Original Loan, but cite no evidence

13 whatsoever in support of those allegations.  (<u>See</u> Opp'n

14 at 4:3-7, n. 1, 2).

15

16    Defendants further rely on the Marix Declaration for

17 the propositions that (1) Palm Desert was a "shell

18 holding entity established as a 'place marker' and an

19 instrumentality controlled and directed by Michael

20 Marix," (Opp'n at 10:3-5); (2) Mr. Marix was the "primary

21 owner" of Palm Desert and Desert Wells, (Opp'n at

22 10:7-9); and (3) Mr. Marix "controlled and managed" Palm

23 Desert.  Mr. Marix's declaration with respect to these

24 matters, however, consists solely of conclusory

25 statements concerning his ownership and control of Palm

26 Desert and various other limited liability companies

27 along with general citations to more than one hundred

28

1   pages of operating agreements of those limited liability

2   companies.  (<u>See</u> Marix Decl. ¶¶ 3-6.)  Mr. Marix's

3   conclusory assertions regarding ownership and control

4   lack specific facts demonstrating such ownership and

5   control and thus are insufficient to create a genuine

6   issue of fact.   <u>See</u> <u>F.T.C. v. Publ'g Clearing House,</u>

7   <u>Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory,

8   self-serving affidavit, lacking detailed facts and any

9   supporting evidence, is insufficient to create a genuine

10  issue of material fact.").[6]  Mr. Marix's general citation

11  to more than one hundred pages of operating agreements,

12  without specifying the portions of those documents on

13  which he relies, is also insufficient.  "'Judges are not

14  like pigs, hunting for truffles buried in briefs.'"

15  <u>Greenwood v. F.A.A.</u>, 28 F.3d 971, 977 (9th Cir. 1994),

16  quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th

17  Cir. 1991).[7]

18  _____

19       [6]On October 26, 2009, Plaintiff filed evidentiary
    objections to the Marix Declaration.  (Doc. No. 153.)
20  For the reasons discussed, the Court does not consider
    any portion of the Marix Declaration to which Plaintiff
21  has objected.  Plaintiff's objections thus are overruled
    as moot.

22       [7]Defendants also contend that an electronic message
23  ("email") sent to Thomas Harnsberger — a person whom they
    fail to identify — shows that Plaintiff was aware that
24  "Mr. Marix was the majority owner of [Desert Wells and
    Palm Desert]."  (Defendants' Stmt. of Genuine Issues ¶
25  1.)  This does not help Defendants, however.  The email
    appears to be from the email address
26  "Noblecompanyllc@aol.com," which Defendants have not
    established belongs to Plaintiff.  Furthermore, even
27  assuming that the email was sent by Plaintiff, it merely
    states that the sender knows "that there are a number of
28                                        (continued...)

16

1       Second, even assuming that Defendants' assertions

2  were supported by admissible evidence, California law

3  requires a demonstration of more than mere ownership and

4  control of a primary debtor to show that a guaranty is a

5  sham.  In determining whether a primary debtor is a mere

6  instrumentality used as an attempt to evade the

7  antideficiency laws, California courts have held that the

8  "correct inquiry . . . is whether the purported debtor is

9  anything other than an instrumentality used by the

10 individuals who guaranteed the debtor's obligation, **and**

11 **whether such instrumentality actually removed the**

12 **individuals from their status and obligations as**

13 **debtors**."  Torrey Pines, 231 Cal. App. 3d at 320

14 (emphasis added).  The question, then, is not merely

15 whether a purported debtor is an instrumentality of an

16 individual guarantor, but also whether the use of that

17 instrumentality actually removed any primary liability of

18 the individual debtor.

19

20     Here, Palm Desert, the primary debtor, is admittedly

21 a limited liability company; its members therefore are

22 not personally liable for its debts.  Cal. Corp. Code §

23

24 ────────────────

    [7](...continued)
25 entities under Mike's control;" it does not specifically
   state that it is aware that Mr. Marix was the majority
26 owner of the two companies at issue.  (See Decl. of
   Vincent Shang Ex. B.)  Finally, assuming that it did
27 establish such knowledge, it remains unhelpful to
   Defendants; "majority owner" status does not show that
28 the companies were mere instrumentalities of that owner.

17

1   17101(a).  Accordingly, assuming that Palm Desert is an
2   instrumentality of Defendants, it is one that actually
3   removes Defendants from their status as debtors.  <u>See</u>
4   <u>Talbott v. Hustwit</u>, 164 Cal. App. 4th 148, 153 (2008).
5   Defendants provide no evidence to the contrary — for
6   example, they offer no evidence Palm Desert was
7   inadequately capitalized, was created for the sole
8   purpose of entering into the Note,[8] or that Plaintiff
9   insisted that Palm Desert take title to the property in
10  lieu of Defendants.

11

12      Defendants' second assertion in support of its
13  argument that a genuine issue of fact exists with respect
14  to whether or not they are true guarantors presents a
15  closer question.  Defendants argue that Plaintiff was
16  only concerned with the financial status of Defendants,
17  and did not inquire into the financial status of Palm
18  Desert when considering the Loan and the Guaranty.
19  (Opp'n at 10:27–11:14; Marix Decl. ¶ 8.)  This assertion
20  is adequately supported by the Marix Declaration and is
21  uncontroverted, as Plaintiff does not dispute it in its
22  Reply.  Plaintiff's failure to inquire into the financial

23

24  _____
25      [8]Though Defendants characterize Palm Desert as a
    "single purpose entity," (Opp'n at 10:19–21), the only
    evidence cited in support of this proposition is
26  paragraph six of the Marix Declaration.  Mr. Marix,
    however, does not attest to this fact in paragraph six of
27  his declaration, and thus Defendants' claim that Palm
    Desert is a "single purpose entity" amounts to nothing
28  more than unsupported attorney argument.

1 status of Palm Desert is thus the only fact properly
2 relied upon by Defendants in support of their argument
3 that a genuine issue of fact exists as to whether or not
4 the Guaranty is a sham.

5

6     Neither party has identified any authority,
7 California or otherwise, that addresses the question of
8 whether or not, where a defendant is a purported
9 guarantor who is protected from personal liability by the
10 corporate form of the primary debtor, that defendant may
11 create a genuine issue of fact as to whether or not it is
12 a true guarantor solely by establishing that the lender
13 examined only the financial information of the purported
14 guarantors, and not the primary debtor.  This Court finds
15 that if it were presented with the question, the
16 California Supreme Court would likely find that this is
17 insufficient to create a genuine issue of material fact,
18 and that no reasonable fact-finder could find in favor of
19 the defendants under such circumstances.

20

21     Although a lender's inquiry only into the financial
22 status of a guarantor has been one factor among many
23 considered by California courts in evaluating sham
24 guaranty defenses, <u>see</u>, <u>e.g.</u>, <u>River Bank</u>, 38 Cal. App.
25 4th at 1423; <u>Torrey Pines</u>, 231 Cal. App. 3d at 320, cases
26 in which it is considered generally either do not involve
27 a limited liability corporation or similar corporate

28

1  entity, or involve significant additional indicia of
2  intent to circumvent the antideficiency laws beyond a
3  failure to examine financial records of the borrower.  A
4  guarantor's protection from personal liability is a
5  weighty factor in considering whether or not they are, in
6  fact, the primary debtor.  <u>See</u> <u>Talbott</u>, 164 Cal. App. 4th
7  at 153.  The Ninth Circuit came to a similar conclusion
8  in upholding a grant of summary judgment in favor of a
9  lender against a defendant-guarantor, recognizing that
10 one of the two primary concerns behind the enactment of
11 section 580b "is not as strong where the guarantor is a
12 corporation whose owners are protected by the central
13 feature of corporations: limited liability."  <u>Paradise</u>
14 <u>Land & Cattle Co. v. McWilliams Enterprises, Inc.</u>, 959
15 F.2d 1463, 1467 (9th Cir. 1992).  Where a guarantor is
16 effectively protected from personal liability for the
17 underlying debt, that guarantor has a greater burden of
18 demonstrating that the guaranty is a sham.
19
20      Accordingly, the Court concludes that where, as here,
21 the corporate form of the borrower effectively removes
22 the guarantor from the role of primary debtor and the
23 guarantor does not offer any other evidence that the
24 guaranty is a sham, the fact that the lender did not
25 review the financial status of the borrow is insufficient
26 to create a genuine issue of fact as to whether the
27 guaranty is a sham.  Under such circumstances, failure to
28

1   review the financial information of the borrower,
2   standing alone, is insufficient to allow a fact-finder to
3   conclude that the parties' intent was to circumvent the
4   protections of the antideficiency laws because the
5   guarantors were not personally liable for the underlying
6   debt absent the guaranty, and thus were never protected
7   by the antideficiency laws.  The parties could not have
8   intended to circumvent protections that did not exist.
9
10       **3.   Defendants' Argument That They Have Not Waived**
11            **Their Rights Is Moot**
12       The parties dispute whether or not the Defendants
13   have waived their rights under the antideficiency laws
14   pursuant to section 2856(c) of the California Civil Code.
15   (See Mot. at 12:1–14:17; Opp'n at 16:15–17:24.)   These
16   arguments are moot, however, as Defendants here have no
17   such rights to waive.  As discussed above, guarantors
18   have no direct rights under the antideficiency laws.   The
19   only indirect protection that a guarantor may have by
20   operation of the antideficiency laws is the Gradsky
21   defense — i.e., the guarantor may assert estoppel against
22   a lender who executes a non-judicial foreclosure on the
23   underlying property.   See Khaloghli, 183 Cal. App. 3d at
24   113.   The purpose of section 2856(c) was to clarify the
25   ability of a guarantor to waive the Gradsky defense.   See
26   WRI Opportunity Loans II LLC v. Cooper, 154 Cal. App. 4th
27   525, 544 (2007).   Here, neither party has indicated that
28

1  Plaintiff has conducted a non-judicial foreclosure of the
2  Property; therefore the <u>Gradsky</u> defense is unavailable to
3  Defendants.  As there is no genuine issue of fact that
4  Defendants are true guarantors and no allegation that
5  Plaintiff has conducted a non-judicial foreclosure of the
6  Property, Defendants have no rights to waive.

7

8  **B.    The Guaranty Is Supported By Adequate Consideration**

9           Having concluded that Defendants have failed to raise
10 a genuine issue of fact as to whether or not they are
11 entitled to the protections of California's
12 antideficiency laws, the Court now turns to Defendants'
13 alternative argument that the Guaranty is unenforceable
14 because it is not supported by adequate legal
15 consideration.  For the reasons discussed below, the
16 Court concludes that there is no genuine issue of fact as
17 to whether or not adequate consideration for the Guaranty
18 exists.

19

20          Defendants argue that no consideration exists for the
21 Guaranty because Mr. Marix did not personally receive any
22 benefit as a result of its execution.  As Plaintiff
23 points out, however, California law does not support this
24 position, as it holds that "consideration for a contract
25 is equally valuable whether it move[s] to the other party
26 or a third party.  Consideration does not have to move to
27 the promisor." <u>City of Los Angeles v. Anchor Cas. Co.</u>,

28

1  204 Cal. App. 2d 175, 181-82 (1962) (citations omitted).
2  It therefore is immaterial whether Mr. Marix personally
3  received any benefit as a result of the Guaranty, so long
4  as some party, whether a party to the contract or a third
5  party, received an intended benefit.  Defendants do not
6  argue that Palm Desert received no benefit as a result of
7  the Guaranty, and thus fail to meet their burden of
8  establishing a lack of consideration for the Guaranty.
9
10     Moreover, when a "guaranty is made coincidentally
11 with the promissory note, the guaranty is supported by
12 the same consideration as the note and is enforceable."
13 Rancho Santa Fe Pharmacy Inc. v. Seyfert, 219 Cal. App.
14 3d 875, 878 (1990); see also Mortgage Guarantee Co. v.
15 Chotiner, 8 Cal. 2d 110, 112 (1936).  Here, the Guaranty
16 and Amendment Two were executed on the same day.  (See
17 Noble Decl. Exs. G, H.)  Accordingly, the Guaranty is
18 supported by adequate consideration so long as the Note
19 is also supported by consideration.  Defendants do not
20 argue that the Note itself is unsupported by
21 consideration, and thus fail to meet their burden of
22 establishing that the Guaranty is unsupported by
23 consideration.
24
25
26
27
28

23

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion and finds that Plaintiff is entitled to judgment as a matter of law on its claim for breach of guaranty.  Plaintiff's second and third claims for relief are DISMISSED.  Plaintiff may submit a Proposed Judgment setting forth damages in the amount of $2,336,837.93 plus any interest, late fees, or penalties accrued as of the date the Proposed Judgment is submitted.

Dated:  December 22, 2009

VIRGINIA A. PHILLIPS
United States District Judge

24